Judgement of the United States Court of Federal Claims that denied interest on the award of damages for the government's unconstitutional taxation of impounded exports of coal should be reversed, because the damages awarded were damages for the unconstitutional taxation of coal, and therefore were damages for an overpayment of an internal revenue tax. Now, are you talking only about the first three years? Is it conceded that you're entitled to interest for the most recent three years? Yes, the government agrees, and indeed, with the refunds for those three years, paid interest on those, the administrative refunds. The provision in question, 28 U.S.C. Section 2411, authorizes interest in any judgment for any overpayment in respect of any internal revenue tax, and the damages awarded were for an overpayment of an internal revenue tax. There's no dispute that the coal excise tax is an internal revenue tax. There's no dispute that the impound's payment of those taxes is an overpayment. So we submit that under the plain language of Section 2411, the requirements met, and that the judgment issued, albeit for damages, is a judgment for an overpayment in respect of an internal revenue tax. The government is arguing that 2411 is part of the overall tax revenue scheme, and that your claim under the Constitution is a separate claim outside that provision, relying on the economy case. Yes. What's your comment on that? Yes, the government maintains that, and this is where we believe the Court of Federal Claims that 2411 is nothing more than just another part of what the government refers to as the tax refund system. 2411, in fact, is broader than that. In this Court's decision in IBM, the Court recognized that 2411 is a provision of law relating to the administration and enforcement of taxes, but the Court did not equate administration and enforcement solely with a tax refund. It recognized that administration and enforcement is a broad concept that includes a court's issuance of judgments and a court's putative issuance of interest on a judgment. And significantly, the judicial role in the IBM case was an issuance of a judgment in a lawsuit very similar to the lawsuit at issue in this case. It was a lawsuit for damages based on the export clause that was filed, instead of in the Court of Federal Claims, in the Court of International Trade. But that was not a lawsuit that was filed within the confines of the tax refund system. It was essentially a suit for damages under the export clause in the Court of International Trade. And in that case, the IBM Court looked to see it was a claim for interest on harbor maintenance tax, the monetary judgment for harbor maintenance taxes. And the Court set out its analysis by saying we've got to have a waiver of the government's sovereign immunity to a board of interest. And if such a statute exists, we then have to see whether the provisions of the HMT statute bar the application of that waiver. And the Court examined the various possible sources of the waiver. And when the Court came upon 2411, the Court found that it agreed with IBM's argument that 2411 has been broadly construed and, in fact, was broad enough to cover the case before the Court. The only reason why 2411 and the waiver in 2411 does not apply is because the harbor maintenance tax statute contains some rather unique language. It said, do not treat the HMT as a tax for purposes of administration and enforcement provisions. And the IBM Court, therefore, was called upon to determine what is meant by administration and enforcement. And it determined that's a very broad concept and was broad enough to cover what the Court of International Trade had done in that case. And I gather you're distinguishing economy plumbing as a case that was essentially a contract case. Yes. And that the recovery was indeed a recovery for contract damages and not at all a tax. It was entirely outside the tax system. That's correct. Economy plumbing is very distinguishable from this case and indeed from IBM as well. In that case, the recovery was a recovery in contract action. And the GAO basically diverted the funds and paid it over to the IRS to satisfy a tax lien against the plaintiff's partner in a joint venture. And the plaintiff argued, well, that makes it a tax overpayment. And the entire thrust of economy plumbing was that the plaintiff was not a taxpayer, had not made a tax payment, and therefore did not satisfy the fundamental prerequisite of the interest under 2411. Now, the government, like the Court of Federal Claims below, relies heavily on dicta in economy plumbing that refer to the administrative system. But we submit that that dicta is very unremarkable and totally inapplicable to this case. Because in economy plumbing, the only way that the plaintiff could have proceeded, had it made a tax overpayment, was by filing a tax refund claim. There was no money mandating constitutional provision akin to the Export Clause or the Judicial Compensation Clause in that case. So that would have been the only route that the plaintiff could have gone. So in order to get interest, the plaintiff would have had to have been a taxpayer who made a tax overpayment and proceeded within the administrative system. And that's exactly what the Court of Federal Claims, or rather the Court of Claims, said in economy plumbing. But the Court did not purport to examine a situation that was not presented with, as we have here, where there is a tax overpayment and the plaintiff can proceed with respect to that tax overpayment outside the tax refund system. It was just not before the Court in economy plumbing. And the Court did not purport to address such a situation in that case. Mr. Horowitz, how do you define an overpayment? Why is this an overpayment? Overpayment has been very broadly defined by the United States Supreme Court. Essentially, it's any payment in excess of that which is lawfully or properly due for whatever reason. And certainly a payment of an unconstitutional tax falls well within the definition of overpayment. There really is no dispute in terms of what the meaning of overpayment is in this case. The government seeks to really embrace an exception on that by saying, well, overpayment in 2411, even though it says any overpayment, means any overpayment except overpayments that are made and challenged in the context of a damages suit under a self-executing constitutional provision such as this. But both of those are within the – there's a reference in 2411 back to the overpayment rate established under Section 6621 of the Internal Revenue Code. Yes. Now, with respect to that, if in fact it's an overpayment, then you're entitled to interest on all of it or just the specific last three years instead of the first three? You've had an opportunity to recover for six years rather than three. Yes. Because if you went through the administrative process, you only would have been able to recover for three years. That's correct. Without question, the interest would have been due. That's correct. Why is it applicable to an overpayment, quote, in quotation marks, I'm not quite sure it's still an overpayment, with respect to the first three years? Well, really what's happened is for the – in this case, the taxpayers filed administrative claims, were issued administrative refunds for those claims, and were paid interest on those claims. And that interest payment was pursuant, no doubt, to Section 6611 of the Tax Code, which provides for interest on overpayments refunded administratively. 2411 provides broadly for interest in any judgment or any overpayment. It's nothing that limits it to the administrative period. So for the earlier three years, 2411 would essentially apply to that three-year period. We're not saying that 6611 would apply necessarily to the earlier three-year period, but 2411 would apply to the tax payments that were covered by and refunded pursuant to the judgment. 6621. 6611. Yes, the rate would be the same rate for both. For any internal or any judgment. Yes. Now, with respect to the distinction between the illegal exaction and a tax, do you have anything to say about that? Was this an illegal exaction rather than a tax? Well, a tax is an illegal exaction. And in this case, we did have an illegal exaction, but under this Court's precedent, and indeed it's recognized in Cyprus, Amundsen, and Hatter, an illegal exaction, even if in the form of a tax, may be challenged if there is a money-mandating constitutional provision that provides a subsequent cause of action for damages. The illegal exaction may be challenged directly based on that money-mandating provision so as to invoke the Court of Federal Claims jurisdiction. There are really two bases. There's an illegal exaction basis, and then there's the damages money-mandating basis. Now, the government has argued that they're mutually exclusive, but they're not. Basically, if you don't have an illegal exaction in such a case, a litigant has only one choice but to invoke the money-mandating provision. But in this case, as in Hatter, the taxpayer is paid an illegal exaction, but the substantive right devolved from the money-mandating provision of the Constitution. So that gave rise to the cause of action for damages, but an illegal exaction and a tax are not mutually exclusive. You don't want to back up too far into the legal exaction area because otherwise you end up looking at no prejudgment interest, right? There's an illegal exaction? Right. Well, if there's a tax overpayment. Well, I understand it's a tax overpayment, but if it's an illegal exaction, can you get a prejudgment interest on an illegal exaction? Well, just as a general matter, that may perhaps be the case in some other instance, but where you have a tax that was unlawfully exacted, it's a tax overpayment, and there's a specific waiver of sovereign immunity with respect to tax overpayments. But not for an illegal exaction? Well, I'm not, frankly, as familiar in what the parameters are just in terms of general illegal exactions in terms of interest. There has to be a waiver of sovereign immunity. There would have to be statute in order to get interest in any case. Well, that's the reason why you're asking for it because you're classifying it as an overpayment of tax, right? Yes. And not as overpayment of an illegal exaction. Well, in that sense, yes, it's an overpayment of tax. So you don't want to back up too far into the illegal exaction area. And, indeed, we're not proceeding as an illegal exaction. We're proceeding in damages under the money-mandating provision with regard to a tax overpayment. Okay. Let's hear from the government. We'll save you rebuttal time. Mr. Rothenberg. Thank you. May it please the Court. Having dodged one jurisdictional bullet in getting a damages award under the Cypress-AMAX, the taxpayers here seek another one and want interest on top of that award. This Court should put an end to it. That's not quite fair, is it? I mean, there's no doubt that this statute was unconstitutional. There's no doubt that they paid the tax under the statute. So why is this dodging a bullet? Because Congress has decided when money that is owed will be paid under statute of limitations. So when I refer to dodging the first jurisdictional bullet, that is getting money back for six years instead of three. I may have overpaid my taxes ten years ago, and that's wrong, but I can't get it back from ten years ago. So this taxpayer got six years. We're not asking for ten years. Excuse me? We're not asking for ten years. They are seeking, in addition to the tax refund for three years and the damages under Cypress-AMAX, they want interest on the damages. And that's where we part company. Well, we part company with Cypress-AMAX, but we also part company especially on the interest because there is no, without a statute, the government is not liable for interest. There is no statute that says a taxpayer who receives a damages award is entitled to interest. And that's what this case is all about. They received an award of damages. They did not receive an award for overpaying their taxes. But, Mr. Rothenberg, if you read the language of 28 U.S.C. 2411, isn't that very broad, isn't it? It's very clear. It says in any judgment of any court rendered for any overpayment in respect of any internal revenue tax, interest shall be allowed under 6621. What's the breadth of that language? If you compare that, if this court in Cypress-AMAX looked at that language, I'm sorry, looked at the language of the claim for refund provision, which has a similar phraseology, which is instead of for an overpayment, for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected. The Supreme Court back in 1947 in Jones v. Liberty Glass said when Congress switched between the shortened version for an overpayment and the longer version for the recovery of any internal revenue tax alleged to have been illegally or erroneously assessed or collected, the Supreme Court said they're basically the same. This was a shorthand description. They were describing the same things. Now, if this court, which is held in Cypress-AMAX, believes that the amounts that this taxpayer paid in the earlier years were not for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, so they are not bound by the tax refund system, then they don't come within 2411, which has essentially the same phraseology. That's exactly what the claims court held in the case below and the companion case of Ucivelli, which goes through a very long discussion of this very point about how the wording of 2411 and 7422 were essentially the same for a period of years and then one of the terms was shortened without any indication by Congress that any difference in meaning was intended. Now, we of course submit that both of these should be interpreted the same and therefore, as the second part of my argument getting into Cypress-AMAX, we think that was wrongly decided. But in any respect... Well, you've already stated that once. Well, I've probably stated some more. You don't think there was enough wisdom in the Cypress... the court did not have sufficient wisdom in Cypress. Well, I stand here before the judge who wrote Cypress-AMAX, so I will be a little delicate on that, but institutionally, we do believe that that's... The judge writes for the court. You can assume that the court has accepted that. You can, of course, request that it be reversed on bank, but it's not a personal opinion. I will devote some time to that. To get back to the interest, in Cypress-AMAX, this court was careful to say you are not in the tax refund system, therefore, you did not receive for the earlier three years an overpayment of tax. What you received under Cypress-AMAX was a damages award. And a damages award is not an overpayment of tax. The measure of damages may be based on how much tax you overpaid, but under the statute, under the Constitution, you are not receiving payment for a tax overpayment. Would you call that an illegal exaction? Well, this court... described illegal exaction on the one hand and money mandating on the other. Illegal exaction cases seem to be the ones where you paid something and you want it back. In our view, this whole case, Cypress-AMAX was an illegal exaction. This court disagreed. This court said no. In Cypress-AMAX, there is a damages award. You have two alternative ways you can proceed. So because it was damages, it was not... By definition, they did not receive a repayment of an illegal exaction. They received damages. Just like the harbor maintenance tax, folks. They received damages. Just like the coal reclamation cases that this court has already addressed. They received damages. And once you receive damages, it is a different ballgame. You are outside and independent of all of the statutes that deal with when a taxpayer gets interest on money, tax money that is paid back to them. But that's if we agree with you that it was damages rather than an overpayment. Well, Your Honor, if it was an overpayment, then the underpinnings of Cypress-AMAX... In other words, to me, this court could not award them interest without overruling Cypress-AMAX. And then they won't get it anyway because if Cypress-AMAX is wrong, then they don't even get the principle, much less the interest for the earlier three years. So we don't see how, given the structure of Cypress-AMAX, that this taxpayer can receive interest for the earlier three years because this court in Cypress-AMAX said you're not recovering a tax overpayment for the earlier three years. You're recovering under the export clause, which this court said was money mandated. Now, of course, we disagree with that, but accepting that for now, they still cannot get an award of interest. Now, you might think that, well, gee, anyone who is injured and recovered damages, well, if it's delaying payment, you should receive interest. Well, that's always the case. We're not trying to overrule Keynesian economics here, but the point is Congress decides, not the Internal Revenue Service, when interest is going to be paid. And even in some of the earlier cases, I believe it was this court's discussion of the Harbor Maintenance Tax, where it held no interest to the taxpayers of Harbor Maintenance Tax, pointed out, used the word something like perfect equivalence would be principal plus interest, but we cannot give you the interest. And even though perfect equivalence might be principal and interest, this court cannot award these taxpayers interest for the first three years. So basically you're saying, unless the taxpayer goes through the administrative process under 7422, 2411 does not apply to any interest recovery on the judgment. You would have to receive a tax overpayment. And because to receive a tax overpayment, you can't just go right into court and sue. You would actually have to file a refund claim. Now, you don't have to pursue the administrative process, but you have to file the refund claim. If IRS sits on it, you can then go into court and you will get your principal, if you're right, and you will get your interest. There's no question, whether you proceed administratively or judicially, for the three years that Congress said you can get money back, you get principal plus interest. But when you extend that and go beyond the three years, the only way you can do that, as I indicated, is if on this constitutional Cypress-Amex method. And that got damages for these taxpayers and the other coal companies, but it cannot give them interest. Now, although I would like to discuss the Cypress-Amex case a little bit in this court's local rule 35A2, which contemplates the exact procedure we have asked for, and that is to ask the panel to submit the Cypress-Amex issue to the whole court. And the reason we're doing that is because, of course, this court has national jurisdiction. And in the terms of tax... in the tax context, any citizen of the United States can file suit in this court. So you want a second bite at the apple? Yes, we do. We want a second bite at the apple because we think Cypress-Amex is fundamentally wrong. And I would like to spend a couple of minutes to explain, even to the author of that opinion, why we think Cypress-Amex is... No, the court authored the opinion. No individual judge... Right, the court authored the opinion. And I recognize that en banc was denied and cert was denied. But both en banc, we hear in en banc and cert, are discretionary actions, and they can be denied for any reason. Well, you have five minutes. If you wish to use it in arguing why that case was wrongly decided, proceed. I will just spend a couple of minutes on that. The reason we think Cypress-Amex was wrongly decided is because we think there are two critical flaws to Cypress-Amex. And the first one deals with the clause that it was decided on. That was decided on the export clause. The other... The only money-mandating, aside from Cypress-Amex, money-mandating constitutional provisions are the takings clause and the judicial compensation clause. Both of those clauses have the word in the Constitution compensation. And that's why those are... Those were held to be money-mandating. If the government does something wrong, they have to make compensation. The export clause is different. Even the Federal Circuit in the U.S. SHU case dealing with the harbor maintenance tax interest recognized that the export clause is different from the judicial compensation clause. So we think the first flaw was equating the export clause, essentially a prohibitory clause, as money-mandating. So we do not think the export clause is money-mandating. The second critical flaw... You don't think the Supreme Court does consider it money-mandating? The Supreme Court has not ruled on the export clause as being money-mandating? No, it has not. What about the harbor maintenance tax? The harbor maintenance was not... The reason... And I'll get to it. This is the second flaw. The second flaw is the harbor maintenance tax. The taxpayers or the... I forgot who it was. The taxpayers in the harbor maintenance, they had filed an administrative claim under the customs laws. They had done what they should have done administratively to get their money back. So when this court in U.S. SHU and the harbor maintenance tax said you're entitled... I'm sorry. In Cyprus Amex, this court relied on its own decision in U.S. SHU. It said, well, the Supreme Court said the harbor maintenance tax is unconstitutional and you're entitled to get your money back. And in U.S. SHU, this court gave them the money back and the Supreme Court affirmed that. My point is that in U.S. SHU, this court did not hold that the taxpayers in the harbor maintenance tax were entitled to it because the export clause was money-mandating. This court held they were entitled to it because they filed the appropriate papers under the customs laws. So that's why the Supreme Court said once they found the harbor maintenance tax was unconstitutional, they were entitled to get their money back because they filed whatever they were supposed to under the customs laws. Our point is these taxpayers did not file what they had to under the tax laws. So this court in U.S. SHU... Well, they did file it for the first three years. I'm just talking about the early three years. In Cyprus Amex, this court held that I don't get the exact language. That under U.S. SHU, the export clause includes a correlative right to money damages as a remedy for its violation. This court in U.S. SHU did not hold that, and the Supreme Court did not hold that. So we think the second critical flaw is that this court in Cyprus Amex improperly relied on its own decision in U.S. SHU, which did not hold that the export clause was money-mandating. If this court didn't hold the export clause as money-mandating in U.S. SHU, the Supreme Court's affirmance also didn't hold it as money-mandating. I went back and looked at the yellow briefs that were filed by the government the first time around. Those were the exact arguments that were made then. Exact arguments. And this court considered them, found them faulty, and dismissed them. So why should we do it all over again? Well, the issue is important enough that if this panel thinks it's worthy, we respectfully would request that it's submitted to the full court on the Cyprus Amex issue. This is a discretionary matter for this panel. That's what the local rule indicates. And we tried to make our best argument as to why we think, with all due respect, that Cyprus Amex was wrong in deciding. That's my argument on Cyprus Amex. Does anyone have a question? Thank you, Mr. Rothenberg. Mr. Horowitz. I just want to touch upon the Cyprus issue very briefly, then go back to the interest, and then finish with Cyprus. I just want to correct an error that government counsel just made with respect to the United States shoe harbor maintenance case. That was a damages case the Supreme Court specifically held in the U.S. shoe case that there were no administrative exhaustion requirements that had to be fulfilled because there was no protestable decision that the customs service made. Therefore, there was no requirement to file an administrative protest with customs. Therefore, the exporters could go directly into the Court of International Trade, pursuant to that court's residual jurisdiction, 28 U.S.C. 1581i. So therefore, the government is incorrect. The premise of why U.S. shoe did not recognize the money damages nature of the export process is incorrect. I would just like to go back to the interest issue. The government says, well, what we have is an award of damages, but I would ask, what were those damages for? They were for a tax overpayment. And we feel that really is the end of the issue, given the breadth of 2411. Now, the government tries to equate the language of 2411 with the language in the tax refund statute, 26 U.S.C. 7422. 2411, initially, back in the 20s, instead of referring to an overpayment, referred to taxes erroneously or illegally assessed or collected. And that is the language that's currently in the tax refund provision. But where the government is incorrect, and that's the same error that the court of federal claims made in the Usabelli case that the government referred to, was that when Cyprus held that the coal producers were not subject to the requirements of the tax refund statute, it held because Cyprus recognized that the coal producers had two routes to proceed. Could have proceeded in a tax refund action or a damages action. But in no way did Cyprus suggest that proceeding by way of the second route, the damages action, negated the existence of an overpayment. And that's the language that's in 2411. It doesn't refer to tax refund statute. So we submit that just because there is a similarity in terms of overpayment encompassing a tax erroneously or illegally assessed, it's simply because taxpayers had a different route that it negated the existence of an overpayment in 2411. Regarding in IBM, the government correctly showed that there was not necessarily a perfect equivalence. But again, IBM recognized that the only reason why you did not have to have that perfect equivalence was because of the unique preclusive language in the harbor maintenance tax statute. And there's no dispute that there's no similar preclusive language that says don't treat the coal excise tax as a tax, either in a coal excise tax statute or any other statute for that matter. Mr. Harris, let me tell you how my thinking has been going in this case. It seems on the one hand, fairly straightforward. The government had your money. They weren't entitled to it. It's been so held. And they should pay for the value of that money. But neither side has discussed very much the principle behind the three year limitation. Either that when it's over, it's over. And if in fact the claim was not filed until after the three years, that there's something to be said for leaving the treasury invulnerable to a retroactive claim to this period. That's more a policy consideration. But I think we've all recognized that there seems to be nothing directly in point. How do you balance? I know you balance these policies in your favor, of course. What's your answer to that? Well, with regard to the public fist and the treasury, in the venture coal decision, this court, in speaking to the six year limitations period applicable to damages actions under the export clause in the coal excise tax scenario, recognized that the six year limitations period, albeit longer than the three years, still provides the government with an ability to adequately plan financially. So, even though it's a longer limitations period, it's not open-ended. And this court has recognized that that is a finite period that the government can do its financial planning with. Now, with regard to the policy, in 1924, this was regarding the predecessor to the Internal Revenue Code's interest provision. Originally, it had a requirement that an administrative claim was a precondition to interest. And that was repealed. And in explaining why that was repealed, you don't even need to have an administrative claim necessarily under the tax code interest provision. Congress recognized that what is critical for the entitlement to interest is simply the existence of an overpayment. The simple fact that you have paid as a taxpayer more than you were obligated to pay gives rise to the entitlement to interest. And that's why there's this broad language for overpayment. Now, clearly, in this case, it would be for six years rather than three years. But we have a Congress has an active statute of limitations that covers this action. Six years. And we have an overpayment. Congress has recognized that in tax overpayment cases, taxpayers should get interest. And just because it's six years rather than three years, it's still what Congress intended. They intended that if you're a taxpayer and you can challenge a tax payment, and you're within whatever applicable limitations period is out there, you should get interest. And that's why the taxpayer should get interest in this case. Okay. Thank you. Thank you, Mr. Horowitz and Mr. Rothenberg. The case is taken under submission.